JANE C. NAGEL, Individually and as Administratrix of the Estate of RALPH NAGEL, Deceased, Plaintiff, v EDWARD METZGER et al., Defendants.

BETHLEHEM STEEL CORPORATION, Third-Party Plaintiff-Respondent-Appellant, v EDWARD METZGER et al., Third-Party Defendants-Appellants-Respondents.

A-T-O, INC., Third-Party Plaintiff-Respondent-Appellant, v EDWARD METZGER et al., Third-Party Defendants-Appellants-Respondents.

T.W. TRUCK EQUIPPERS, INC., Third-Party Plaintiff-Respondent-Appellant, v EDWARD METZGER et al., Third-Party Defendants-Appellants-Respondents.

Fourth Department, July 13, 1984

2

APPEARANCES OF COUNSEL

*Damon & Morey* (*Brian Fitzgerald* and *Mary K. Knauf* of counsel), for Edward Metzger and another, third-party defendants-appellants-respondents.

*Phillips, Lytle, Hitchcock, Blaine & Huber* (*Leo Agozzino* and *Paul F. Jones* of counsel), for Bethlehem Steel Corporation, third-party plaintiff-respondent-appellant.

*Mark G. Farrell* (*Ralph Cessario* of counsel), for A-T-O, Inc., third-party plaintiff-respondent-appellant.

*Maloney, Gallup, Roach, Brown & McCarthy, P. C.* (*John Giardino* of counsel), for T.W. Truck Equippers, Inc., third-party plaintiff-respondent-appellant.

OPINION OF THE COURT

CALLAHAN, J. P.

Plaintiff, Jane C. Nagel, individually and as administratrix of the estate of Ralph Nagel, commenced an

action against Edward Metzger, Doris Metzger, A-T-O, Inc. (A-T-O), T.W. Truck Equippers, Inc. (T.W. Truck), and Bethlehem Steel Corporation (Bethlehem), to recover money damages for the alleged wrongful death and conscious pain and suffering of her husband, Ralph Nagel. On February 26, 1976, Ralph Nagel was severely injured in the course of his employment with ERSCO, Inc. (ERSCO), during tree cutting and removal operations when he was struck by a tree trunk which was suspended from a crane and wire rope, which were designed, manufactured and/or sold and distributed to ERSCO by defendants, A-T-O, T.W. Truck and Bethlehem. He died as a result of those injuries on March 3, 1976.

ERSCO, a business involved in the storage and transportation of bleachers, was clearing property leased by it from Edward and Doris Metzger for the purpose of creating storage space for bleachers. Edward Metzger was a coemployee of plaintiff's decedent and was operating the crane when the accident occurred. Doris Metzger is the sole shareholder and a corporate officer of ERSCO. The Metzgers reside in one of two houses owned by them adjacent to the work site.

In 1979, upon motion of Edward and Doris Metzger, Special Term dismissed the action against the Metzgers upon the grounds that it was barred by sections 11 and 29 of the Workers' Compensation Law. The court refused to find that the Metzgers had a second legal personality as property owners separate and distinct from that as coemployees. Furthermore, it declined to pierce the corporate veil to bare Doris Metzger as a real property owner because doing so would subvert the scheme and purpose of the workers' compensation statute. We affirmed (*Nagel v Metzger*, 75 AD2d 984, mot for lv to app den 52 NY2d 703).

Defendants A-T-O, T.W. Truck and Bethlehem subsequently commenced third-party actions against ERSCO, Edward Metzger and Doris Metzger seeking indemnity or contribution. Third-party plaintiffs seek to predicate the Metzgers' liability upon their ownership of the real property, individual negligence, violations of the Labor Law and regulatory violations. Third-party defendants Doris and Edward Metzger answered and moved for summary

judgment dismissing the third-party complaints against them. They claim that no liability can be assessed against them since the real property was leased to ERSCO at the time of the accident. Furthermore, they assert that Doris Metzger neither directed nor participated in the tree removal operations, did not observe the accident and was unaware of any dangerous condition existing at the site. Third-party plaintiffs asserted that there are triable issues of fact as to whether the Metzgers as individuals were negligent and whether the Metzgers as property owners had a right to control the work even though the property was leased to ERSCO. By order dated April 25, 1983, Special Term granted summary judgment to the Metzgers dismissing claims of liability pursuant to sections 200 and 240 of the Labor Law and denied summary judgment with respect to claims of liability under subdivision 6 of section 241 of the Labor Law. Upon motion for reargument, the court dismissed the claims of liability under 12 NYCRR part 3, affirmed its previous ruling as to the claims under subdivision 6 of section 241 of the Labor Law, and denied summary judgment with respect to claims predicated upon Metzgers' alleged common-law negligence, individually and as property owners.

At the outset, we should state that our prior ruling on the first-party action (*Nagel v Metzger, supra*) does not constitute the law of the case herein. There, plaintiff's direct action against the Metzgers on the basis that they wore two hats (as employers and property owners) was disallowed so as to prevent circumvention of the Workers' Compensation Law. The same policy considerations do not compel us to refuse to recognize the Metzgers' legal status for purposes of this third-party action.

At an examination before trial, Edward Metzger testified that the accident happened when he made a V-notch in the tree. Because the tree was leaning, he placed the low boom of the crane against it while decedent made the second cut. The chain saw blade got wedged in the cut. Metzger dropped the crane's cable down and decedent wrapped the belt or strap on the end of it around the tree. After decedent signaled, Metzger raised the cable to lift the weight of the tree off the saw "not knowing [decedent] had

cut completely through the tree". Decedent removed the saw and stooped over to pick up his pipe that had fallen out of his pocket. The tree came loose, took an erratic spin, "clocked [decedent] in the head and knocked him into the bumper of the truck". Metzger admitted that he "probably did pick up a little more weight" while decedent was stooping over and that he did not specifically request a nonrotating wire cable which he purchased approximately 45 days before the accident, as he assumed that all crane cables were of that type.

On appeal, the Metzgers contend that they cannot be held liable under subdivision 6 of section 241 of the Labor Law because (a) the property was leased to ERSCO so they did not control the property or the manner of performance of the work at the time of the accident; (b) there are no legitimate allegations that the accident resulted from a violation of a rule promulgated by the Board of Standards and Appeals, and (c) the site of the tree cutting and removal operation is not an area in which construction, excavation or demolition work was being performed. Special Term refused to dismiss the subdivision 6 of section 241 claim reasoning that the section applies to excavation regardless of its relationship to a building or structure and that it applies to owners regardless of their control or lack of control over the operations. We agree.

Section 241 of the Labor Law imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection to workers (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 300-301) making them "responsible for a breach of the requirements of the statute irrespective of their control or supervision of the work site" (*DaBolt v Bethlehem Steel Corp.*, 92 AD2d 70, 73; *Long v Forest-Fehlhaber*, 55 NY2d 154, 159-160; *Haimes v New York Tel. Co.*, 46 NY2d 132, 136; *Kappel v Fisher Bros., 6th Ave. Corp.*, 39 NY2d 1039).

The legislative decision to impose "absolute liability" on owners was not arbitrary, but rather reflected the Legislature's intent to encourage owners to hire responsible contractors. Moreover, the statute now serves the salutary purpose of inducing owners and contractors to assure that only financially responsible and safety conscious subcon-

tractors are engaged so that a high standard of care might be maintained throughout the entire construction site (*Sweeting v Board of Coop. Educational Servs.,* 83 AD2d 103, 113-114). While the duty imposed by section 241 may not be delegated, the burden may be shifted to the party actually responsible for the accident either by way of claim of apportionment of damages under the rule of *Dole v Dow Chem. Co.* (30 NY2d 143) or by contractual language requiring indemnification by the injured worker's employer (see *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.,* 35 NY2d 1, 5-7). Liability in the normal course will be cast ultimately upon the party actually responsible for the accident (*Long v Forest-Fehlhaber, supra,* pp 159-160; *Allen v Cloutier Constr. Corp., supra,* p 301).

The fact that the Metzgers leased the property to ERSCO, apparently by oral agreement, does not alter their exposure to liability as fee owners of the property. The "owners" contemplated by the Legislature are those parties with a property interest to hire the general contractor to undertake the construction work on their behalf. It is the party who, as a practical matter, has the right to hire or fire subcontractors and to insist that proper safety practices are followed. It is the right to control the work that is significant, not the actual exercise or nonexercise of control (*Sweeting v Board of Coop. Educational Servs., supra,* p 114).

Special Term properly declined to dismiss the section 241 claim for lack of proof of a violation of a rule promulgated by the Board of Standards and Appeals. Neither subdivision 6 of section 241 of the Labor Law, nor the administrative regulations promulgated pursuant thereto, provide a new theory for a cause of action. Rather, subdivision 6 merely imposes vicarious liability on owners only where the predicate cause of action of common-law negligence exists against the contractor, subcontractor, or employee. There is no need to show that a violation of administrative regulations occurred to establish a predicate cause of action in negligence. This conclusion is buttressed by the use of the word "may" in subdivision 6. If the Board chose not to promulgate regulations pursuant to this subdivision due to lack of time or resources, certainly this

failure should not be interposed to defeat the legislative intention of imposing liability on owners.

In any event, there are regulations which, in view of the facts in the record, may have been violated. 12 NYCRR 23-8.1 and 23-8.2 set forth safety requirements for inspection and operation of mobile cranes and their wire ropes. Specifically, 12 NYCRR 23-8.1 (b) (1) requires wire rope to be inspected at intervals not exceeding one month. At the examination before trial, Edward Metzger revealed that an inspection of wire rope "is done usually at a period of every three months or so" and that this rope was probably last inspected by the decedent when it was purchased, one and one-half months prior to the accident.

The proximity of the worker to a building or structure is not a determining factor to sustain a section 241 cause of action (*DaBolt v Bethlehem Steel Corp., supra,* pp 73-74). All work of the type performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures, whether or not such work is performed in proximate relation to a specific building or other structures, including the work of hoisting and land clearing, is considered within the definition of construction work (12 NYCRR 23-1.4 [b] [13]). Hence, sites of clearing operations, regardless of their proximity to a specific building, are "places" within the purview of the Labor Law.

In the motion for summary judgment for dismissal of the cause of action pursuant to section 200 of the Labor Law, the Metzgers maintain that (a) there was no triable issue of fact regarding dangerous conditions in the premises and that they, as individuals, had no control of ERSCO's equipment and (b) the site of the tree removal operation was not a "place" within the context of section 200. In dismissing the section 200 cause of action, Special Term found that any defect was not in the land itself but in the equipment or its operation, which the Metzgers as property owners were not obliged to supervise. Generally, a duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor's own plant, tools and methods (*Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145; *Tilkins v City of Niagara Falls,* 52 AD2d 306, 308; *Ortiz v Uhl,* 39 AD2d 143, affd 33 NY2d 989).

However, if the owner exercises supervisory control over the safety of the machinery or methods, or has actual or constructive notice of defects, he or she has a duty to protect the employee's health and safety. Failure to do so may result in liability under section 200 of the Labor Law (*DaBolt v Bethlehem Steel Corp.*, 92 AD2d 70, 72-73, *supra*).

■ Here, third-party plaintiffs claim no defect in the premises themselves, but focus upon the existence of a defect in the crane's wire rope or negligence in the supervision and execution of tree cutting and removal operations. The oral lease agreement to the property owner's family held corporation is silent as to the details of safety rules and even as to decisions on property alterations. There is some evidence that Doris Metzger took no part in the supervision of the operation, as her involvement with ERSCO was apparently limited to financial transactions. Nevertheless, she observed the operation shortly before the accident occurred and her actual or constructive knowledge of the unsafe manner in which the operations were performed is a triable issue of fact. More importantly, Edward Metzger supervised ERSCO's operations and appears to have been responsible for establishing equipment inspection procedures and supervising the details of tree cutting operations. Any actual or constructive knowledge he had in the capacity as supervisor of ERSCO existed within his mind, and is inseparable from his knowledge as property owner. Because exercise by the property owner of control over the details of the manner of work, or actual or constructive knowledge on the part of the property owner of an equipment defect gives rise to liability under section 200 of the Labor Law, they constitute triable issues of fact. Hence, the court erroneously granted summary judgment dismissing the section 200 claim.

■ In granting summary judgment dismissing the cause of action based on section 240 of the Labor Law, the court found the construction of the addition too remote in time and place to fall within the intent of that section. That this particular work was being performed at a distance from the site of alteration is of no consequence, as it is certain that the work was necessary and incidental to the project

(see *Ploof v B. I. M. Truck Serv.*, 53 AD2d 750). While section 240 should be liberally construed to accomplish the purpose of the legislation (*Kennedy v McKay*, 86 AD2d 597, 598; *Lagzdins v. United Welfare Fund-Security Div. Marriott Corp.*, 77 AD2d 585, 588; *Rocha v State of New York*, 45 AD2d 633, 635), it is not applicable in these circumstances. This section has historically been employed to protect the safety of employees working on scaffolding and other elevated structures (see *Haimes v New York Tel. Co.*, 46 NY2d 132; *DaBolt v Bethlehem Steel Corp., supra; Rocha v State of New York, supra*).

■ The cause of action based upon the property owners' negligence is identical to the section 200 cause of action. Section 200 of the Labor Law merely codifies the common-law duty imposed upon an owner to provide construction site workmen with a safe place to work (*Russin v Picciano & Son*, 54 NY2d 311, 316-317; *Allen v Cloutier Constr. Corp., supra*, p 299; *DaBolt v Bethlehem Steel Corp., supra*, p 72; *Tilkins v City of Niagara Falls, supra*, p 308). Third-party defendants have not demonstrated that there are no triable issues of fact with regard to the extent of Metzgers' supervision and control of the details of the tree cutting and removal operation and as to their actual or constructive knowledge of the defects in the equipment. Summary judgment would not be proper dismissing the common-law negligence causes of action and therefore was properly denied.

Accordingly, the order granted April 25, 1983 should be modified in accordance with this opinion and the order granted November 14, 1983 should be affirmed.

DENMAN, BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

Appeal No. 1. — Order [April 25, 1983] unanimously modified, and as modified affirmed, without costs, in accordance with opinion by Callahan, J.

Appeal No. 2. — Order [November 14, 1983] unanimously affirmed, without costs.